416

701 A.2d 437

GERALDINE GREENE, INDIVIDUALLY AND AS ADMINISTRA-
TRIX OF THE ESTATE OF WILLYONNA GREENE, DE-
CEASED, PLAINTIFF–APPELLANT, v. MEMORIAL HOSPITAL
OF BURLINGTON COUNTY, A NEW JERSEY HOSPITAL COR-
PORATION, DONNA BLICKLE, R.N., JULIE FENIMORE, R.N.
AND BARBARA DEASY, R.N., BEING NURSES EMPLOYED BY
MEMORIAL HOSPITAL IN THE EMERGENCY DEPARTMENT,
JANE DOE, ALSO BEING A NURSE EMPLOYED BY MEMORI-
AL HOSPITAL IN THE EMERGENCY DEPARTMENT, DEFEN-
DANTS,SOUTH JERSEY EMERGENCY PHYSICIANS P.A., A
PROFESSIONAL ASSOCIATION, AND DR. PATTI BROWN, IN-
DIVIDUALLY AND AS AN EMPLOYEE OF SOUTH JERSEY
EMERGENCY PHYSICIANS, P.A., JOINTLY, SEVERALLY AND
IN THE ALTERNATIVE, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 20, 1997—Decided April 1, 1997—Remanded by
Supreme Court July 15, 1997—Resubmitted September 17,
1997—Decided October 8, 1997.

Before Judges SHEBELL, BAIME and PAUL G. LEVY.

*Jeffry A. Mintz,* attorney for appellant.

*Paarz, Master, Koernig, Crammer, O'Brien, Bishop & Horn,* attorneys for respondents (*Mary Ann C. O'Brien,* on the letter-brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This case is before us based upon an order of our Supreme Court remanding the matter for reconsideration in light of *Gardner v. Pawliw,* 150 *N.J.* 359, 696 *A.*2d 599 (1997). We briefly recite the salient facts. Plaintiff Geraldine Greene, individually and as administratrix of the estate of her deceased daughter Willyonna Greene, appealed from a judgment entered at the conclusion of her case dismissing her claims for medical malpractice and negligent infliction of emotional distress. The trial court found that no medical evidence had been presented from which a

jury could reasonably find that defendant Dr. Patti Brown's negligence increased the risk of harm caused by Willyonna's preexisting condition or that such increased risk constituted a substantial factor in producing the ultimate result.

In the direct appeal, we agreed that plaintiff failed to establish proximate cause under the modified standard governing actions in which a doctor's alleged malpractice has combined with a preexisting condition to cause harm. *Greene v. Memorial Hosp. of Burlington County*, 299 *N.J.Super.* 372, 691 *A.*2d 369 (App.Div. 1997). While a majority of this court concluded that plaintiff's failure to satisfy that test required the involuntary dismissal of the claim for negligent infliction of emotional distress, *id.* at 384–85, 691 *A.*2d 369, Judge Shebell filed a separate opinion concurring in part and dissenting in part. *Id.* at 385, 691 *A.*2d 369. Judge Shebell agreed that plaintiff failed to establish proximate cause with respect to the principal claim, but concluded that this failure of proof did not preclude recovery on the cause of action for negligent infliction of emotional distress. *Id.* at 385, 691 *A.*2d 369.

Following our decision, our Supreme Court on July 14, 1997, rendered its decision in *Gardner v. Pawliw*, 150 *N.J.* 359, 696 *A.*2d 599. There, the Court addressed the difficulties a plaintiff faces in meeting his or her burden of proof in a medical malpractice action where a physician deviates from the prevailing standard of care by failing to perform a diagnostic test. The complication arises because the failure to perform the diagnostic test may eliminate a source of proof necessary to enable a medical expert to testify to a degree of reasonable medical probability concerning what might have occurred had the test been performed. Thus, where it is a deviation not to perform a diagnostic test, but it is unknown whether the test results would have helped to diagnose or treat a preexisting condition, the plaintiff is not required to demonstrate to a reasonable medical probability that the test would have resulted in avoiding the harm. In this context, the Court held:

When the prevailing standard of care indicates that a diagnostic test should be performed and that it is a deviation not to perform it, but it is unknown whether performing the test would have helped to diagnose or treat a preexistent condition,

[our law] does not require that the plaintiff demonstrate a reasonable medical probability that the test would have resulted in avoiding the harm. Rather, the plaintiff must demonstrate to a reasonable degree of medical probability that the failure to give the test increased the risk of harm from the preexistent condition. A plaintiff may demonstrate an increased risk of harm even if such tests are helpful in a small proportion of cases. We reach that conclusion to avoid the unacceptable result that would accrue if trial courts in such circumstances invariably denied plaintiffs the right to reach the jury, thereby permitting defendants to benefit from the negligent failure to test and the evidentiary uncertainties that the failure to test created.

[*Id.* at 387, 696 A.2d 599.]

On the same day the Court rendered its decision in *Gardner*, it granted plaintiff's petition for certification and remanded this matter to us for reconsideration. *Greene v. Memorial Hosp. of Burlington County*, 151 *N.J.* 67, 697 *A.2d* 542 (1997). We now conclude that the trial court erred by refusing to submit the question of proximate cause to the jury.

■ Dr. Bruce Phillips, a physician certified in emergency medicine, testified on behalf of plaintiff. He concluded that Dr. Brown deviated from accepted standards by failing to examine Willyonna after being apprised that the patient's vital signs had changed and that her respiratory rate had increased. According to the witness, Willyonna should have been placed on a heart monitor and oxygen administered.

As we noted in our original opinion, Phillips' testimony respecting proximate cause was "highly equivocal." *Greene v. Memorial Hosp. of Burlington County*, 299 *N.J.Super.* at 378, 691 *A.2d* 369. The witness acknowledged his inability to state with a reasonable degree of medical probability that the underlying condition, severe inflammation of the heart, would have been discovered had the child been examined and monitored in a timely fashion, or that the child would have survived had appropriate treatment been administered. Although Phillips suggested that the failure to implement appropriate "modalities ... contribute[d] to the patient's decrease in survivability," he later explained that this was only a "possibility" and that the diagnostic and corrective procedures he had

recommended would have provided only a "slight margin" of impact.

■   Unfortunately, the direct and cross examination of Phillips was interrupted by a plethora of objections interposed by both counsel. The witness's testimony respecting proximate cause can fairly be characterized as disjointed and confusing. In reviewing Phillips testimony, however, we are particularly impressed by the following question and answer on direct examination:

Q.   Do you have an opinion to a reasonable degree of medical probability based on your training and experience as to whether the failure to provide the treatment you described deprived this child of an opportunity for continue[d] life?

A.   Again, had these measures been carried out I believe they would have afforded the child a more higher percentage of survival potential than there were in the fact that they were not carried out.

While the trial court ultimately struck the witness's answer because it was not phrased in terms of medical "certainty," the judge clearly erred in that respect. An expert's opinion need not be predicated on medical certainty. Although Phillips later qualified his answer to some degree when cross examined, the question propounded by counsel causing him to so respond was so prolix as to be incapable of yielding a reliable reply.

We are thus confronted with a muddled record susceptible to conflicting interpretations. Accepting as true all the evidence which supports plaintiff's claim and according her the benefit of all legitimate inferences flowing from the proofs presented, we believe that the question of proximate cause should have been submitted to the jury. *See Lanzet v. Greenberg,* 126 *N.J.* 168, 174, 594 *A.*2d 1309 (1991). Based on Phillips' testimony, a jury could reasonably find that defendant deviated from accepted standards by failing to examine Willyonna and placing her on a heart monitor after being apprised that the patient's vital signs had changed, and that the physician's malpractice "increased the risk of harm from the preexistent condition." *Gardner v. Pawliw,* 150 *N.J.* at 387, 696 *A.*2d 599.

Accordingly, the judgment is reversed, and the matter is remanded to the Law Division for a new trial.